# Noble v. Tate.

119 399
. p140 477

*Bill in Equity for Settlemeent of Administration and Other Trusts.*

1. *Right of distributees to settlement in chancery.*—The probate court not having taken jurisdiction for the settlement of an estate, the distributees have a right to go into the chancery court for a settlement without alleging any special equity.

2. *Duties of executrix coupled with other trusts; when equity will enforce.*—Where the will of the testator provides that the estate shall be kept together to be distributed equally among certain legatees as they become of age, and thereafter the executrix shall hold, manage and control the property as trustee for the sole and separate use of the legatees during their natural lives; and, the legatees having arrived at age, the executrix has filed no inventory of the estate, made no distribution, taken no steps to make a settlement, nor made any allowance to the legatees for the use of the property, they may come into equity to have a distribution, and their shares of the estate ascertained and set apart, and managed and disposed of according to the provisions of the will.

3. *Surviving partner; who may bring to account; when proper party to bill for settlement of deceased partner's estate.*—The personal representative of a deceased partner alone can maintain a bill against the surviving partner for a settlement of the partnership; but when the surviving partner is one of the distributees in the estate of the deceased partner. he may be joined as respondent in a bill by other distributees against the executrix for a settlement of the estate, and an accounting be had of the partnership affairs, as well as of the other funds of the estate received by the surviving partner, that the inter-

est of the estate in the partnership and funds so retained by him, may be considered and decreed as an advance by the executrix on his distributive interest; and, if in excess of his distributive interest, the other distributees may look to their right, if any, to charge the executrix therewith as for a devastavit.

APPEAL from Montgomery City Court.
Tried before the Hon. A. D. SAYRE.
The case is sufficiently stated in the opinion.

TOMPKINS & TROY, for appellant, cited, 2 Lindley on Partnership, p. 593; *Utterson v. Mair*, 2 Vesy, 95; *Rosenmcig v. Thompson*, 66 Md. 593.

GRAHAM & STEINER, *contra*, cited, *Bromberg v. Bates*, 98 Ala. 621; *Gould v. Hayes*, 19 Ala; *Baker v. Mitchell*, 109 Ala. 490; *Weakley v. Gurley*, 60 Ala. 399; 1 Daniel Chancery Pl. and Practice, p. 337; 1 Beach on Mod. Eq. Juris. 21; Am. & Eng. Encyc. of Law, 947; *McHan v. Ordway*, 82 Ala. 463; *Tecumseh Iron Co. v. Camp*, 93 Ala. 572; *Tygh v. Dolan*, 95 Ala. 269; *Lehman v. Meyer*, 67 Ala. 396; *Adams v. Jones*, 68 Ala. 119.

HEAD, J.—On May 23, 1890, Mrs. M. T. Noble, who, with another was nominated in the will as such, was appointed executrix of the will of her deceased husband, Benjamin F. Noble, by the probate court of Montgomery county, and she has since continued to be and act as such, having made no settlement of the trust. The estate of the testator (which was large) was devised and bequeathed jointly and in equal interests, to said Mary, the widow and testator's children, Annabella M., Edward F. and Mary F. Noble and to any future "heir or heirs" of the marriage of testator and said Mary. There were afterwards born of the marriage, Louisa M. (who married Holt) and J. S. Noble. Edward F. afterwards died leaving two children, Benjamin F. and Edward M., both under age at the filing of this bill, and in the custody and control of said Mary, the executrix, but of whose persons and property the said J. S. Noble is the legally appointed and acting guardian.

The will provided that the estate should be kept together as a common fund to be distributed equally as

[Noble v. Tate.]

the "heirs" should become of age, but that his wife should have the privilege of withdrawing from the estate her "equal and just proportion" at any time she might think proper, after providing for the payment of the debts. It was provided that said Mary should have the control, management and education of the children, the expenses of which, together with the support of said Mary (her share not having been withdrawn), to be paid out of the common fund, and until a withdrawal of her interest she was given the use of the residence, furniture and other things pertaining to the household.

The will appointed the executor (who was a brother of testator but who declined to act either as executor or trustee) and the executrix, the said Mary, named therein, and their successors, to act as trustees for all of the testator's daughters, to hold, manage and control the property of each for her sole and separate use and benefit during her natural life—the property then to vest in her "natural offspring, if any;" but the daughters should be "permitted the use and benefit of the property."

The said Annabella married Tait, and she and Mrs. Holt file this bill for removal of the administration and settlement of the estate in the chancery court, the executrix and other devisees being parties defendant.

The bill shows that the devisees and legatees are all over twenty-one years of age, except said two children of Edward F. The executrix has never withdrawn her share of the estate; she has never returned any inventory, nor made any settlement or distribution. The debts, if there are any, have all been paid or are barred by the statutes of limitations or non-claim.

The bill alleges that, at the death of the testator, he and his son, said J. S. Noble, were engaged, as partners, in the real estate and insurance business, in Montgomery; that said J. S. has since wound up the business but has not accounted to the executrix for the interest of the testator's estate therein. It is further alleged that the said J. S., upon his own responsibility, or as agent of the executrix, collected other large sums of money belonging to the estate for which he has never accounted to the executrix, which complainants insist he should be made to account for, or be charged therewith against his distributive share of the estate. The complainants have never received anything from the estate.

26

[Noble v. Tate.]

· The .foregoing is substantially the case made by the bill.

The prayer is .appropriate for the removal of the administration and. trusts into the chancery court, and for settlement thereof, praying specially for an accounting from J. S. Noble for the said funds of the estate in his hands, adding the prayer for general relief.

The said J. S. Noble demurred to the bill and moved to dismiss it, as to him, for the want of equity.

The gravamen of the demurrers which are assigned first, to the whole bill, and then to only so much thereof as appropriately raises the question, is that the complainants have no right to call upon him to account for moneys of the estate in his hands, that right pertaining alone to the executrix; that the bill is multifarious in that it seeks removal of the administration, etc., into the chancery court and a settlement there against the executrix, and also to bring him to a settlement of said partnership and an account for those and the other funds in his hands.

The chancellor overruled the demurrers and motion to dismiss, and J. S. Noble appealed.

It is needless to discuss the equity of the bill.  The complainants, in the condition of the estate, as shown by the bill, are entitled to have a distribution and their shares of the estate ascertained and set apart, and managed and disposed of according to the provisions of the will, and the probate court (if its jurisdiction were conceded to be adequate) not having taken jurisdiction, the complainants have a right to go into the chancery court without alleging any special equity.  The motion to dismiss was properly overruled.

If J. S. Noble had no other relation to the estate than as the debtor he is described in the bill to be, it is most clear that the complainants would have no right to bring him into the suit for the purpose of accounting for what he owes.  Strictly speaking, his obligations are to the executrix and not to the legatees, she being liable to the latter, when she comes to settle her trust, for any default on her part in reducing the assets to her possession. In the absence of some special equity—for instance, it may be, insolvency of the executrix and refusal on her part, upon request, to protect the interests of the estate by taking such steps as were necessary to reduce the a-

[Fulgham v. Fulgham,]

sets to her possession—the legatees would have no right to sue the debtor even in a separate suit for the purpose of collecting the debt.

But, J. S. Noble is one of the legatees entitled to have distributed to him a share of the estate. The filing of the bill begins the final winding up of the estate which should proceed to its consummation with all practicable speed. The executrix has failed to collect these funds from J. S. Noble, and he has them in his hands; she has permitted him to retain the funds, taking no steps to coerce collection from him. In the view of a court of equity, the settlement being there begun, we see no reason why the retention of the funds by J. S. Noble to the extent of his distributive interest in the estate may not be properly considered as an advance by the executrix upon that interest. Such a course would, in all probability, facilitate the settlement, prevent litigation, expense and delay, and would assuredly be just and equitable to all parties concerned. It is true, under the allegations of the present bill, that no decree could be rendered against J. S. Noble for any excess of his indebtedness over his distributive share. His accounting would be only for the purpose of satisfying in whole or in part, as the case might be, his distributive share of the estate when ascertained. For any excess, the legatees would look to their right, if any, to charge the executrix as for a *devastavit*.

It is our opinion, therefore, that for the limited purposes above suggested, the chancery court may well take cognizance of the funds of the estate in J. S. Noble's hands in connection with its administration of the estate, and that the demurrers insisting upon the contrary view were properly overruled.

Affirmed.