Case 83.—ACTION BY CARRIE ALDERSON, ADM'X OF J. J. ALDERSON, DECEASED, AGAINST J. W. ALDERSON AND OTHERS FOR A SETTLEMENT OF THE ESTATE.— June 6.

## Alderson, &c. v. Alderson's Gd'n.

Appeal from Henderson Circuit Court.

J. W. HENSON, Circuit Judge.

Alderson, &c. v. Alderson's Gd'n.

On rehearing former opinion withdrawn and judgment reversed.

1. Real Estate—Liability for Debts of Ancestor—Sale by Heirs or Devisees — Limitation — Formerly, under the common law, the heir or devisee could alienate lands received by devise or descent at any time after the death of the ancestor, and pass a good title to a bona fide purchaser for a valuable consideration, but under the present statutes of this State this can not be done until after six months from the date of the death of the ancestor. And the only way to prevent or defeat the creditors of the deceased from subjecting his land to the payment of their claims is by a voluntary alienation by the heir or devisee after six months from the date of the death of the ancestor.
2. In equity and good conscience the debts of the deceased should be paid out of the estate left by him before it should be made to pay the individual debts of the heir or devisee.

W. P. McCLAIN, MONTGOMERY MERRITT and DORSEY & STANLEY for appellants.

We suggest:
1. A creditor of a child can have no higher right than the child had.
2. A child can have no right in his father's estate until his father's debts are paid.

### AUTHORITIES CITED.

Smith & Voss v. Brogees, Adm'r, 4 Ky. Law Rep., 447; Park v. Smoot, 20 Ky. Law Rep., 1043; Greer v. Simrall, 22 Ky. Law Rep., 1037; Scobee v. Bridges, 87 Ky., 432; Brown v. Mattingly, 91 Ky., 276; Taylor v. Jones, 97 Ky., 201; Ky. Stats., sec. 2087.

THOS. E. & E. C. WARD for appellee.

We contend that whether the estate was solvent or insolvent, and whether objection be made by the heir or the creditor, that by our superior diligence in bringing our suit, acquiring our lien, perfecting it by judgment, we have acquired a superior claim upon the one-fifth interest of Wes Alderson in his father's estate, which, not having been attacked within six months, is now immune as against the attacks of either heir or creditor.

AUTHORITIES CITED.

Smith & Voss v. Brogees, Adm'r, 4 Ky. Law Rep., 447; Scobee v. Bridges, &c., 87 Ky., 430; Greer v. Simrall, 22 Ky. Law Rep., 1037.

OPINION BY JUDGE NUNN—Reversing.

A short history of the matters involved will be necessary to a clear understanding of this case: In the year 1898 a judgment for $1,350 was rendered in the Henderson Circuit Court, on appeal, against J. W. Alderson, in favor of Lola Green, infant daughter of Rosa Green, on a writ of bastardy. Execution on this judgment was returned, "No property found." During the pendency of that prosecution J. W. Alderson was indicted for the seduction of Rosa Green. He defeated that prosecution by marrying her. After 12 months had elapsed from the time of the marriage —they never having lived together—J. W. Alderson sued his wife for a divorce. During the pendency of this action for divorce, and on the 1st of February, 1900, J. J. Alderson, the father of J. W. Alderson, died, leaving five children, his only heirs, and his widow, Carrie Alderson, surviving him. On the 3d of February, three days after the death of Alderson, the Ohio Valley Banking & Trust Company, as guardian for Lola Green, instituted this action in the Henderson Circuit Court against J. W. Alderson and the widow and all the children of J. J. Alderson, deceased, describing the real estate, which consisted of several tracts of land, and sought to subject the one-fifth undivided interest of J. W. Alderson therein for the satisfaction of the $1,350 judgment due Lola Green, and also for the purpose of setting aside a conveyance made by J. W. Alderson to his father, J. J. Alderson, for a one-half interest in 74 acres of land. It was alleged that this was a fraudulent conveyance;

that it was executed for the purpose of defeating this child from the collection of its judgment. This case was consolidated with the one brought by Alderson against his wife for a divorce. The court on the trial of these cases adjudged that J. W. Alderson was entitled to a divorce from his wife, and decreed that she should pay the cost, and refused her alimony. And in the same judgment the court decreed that the appellee herein had a lien on the undivided one-fifth interest of J. W. Alderson in the real estate of his father, and directed that this lien be enforced. In these consolidated actions J. W. Alderson sought to defeat the claim of appellee upon the ground, as he claimed, that his marriage with the mother of appellee legitimatized the child and satisfied the judgment. The court refused to give him relief upon this ground, and he appealed to this court. This court determined that the marriage did not satisfy the judgment, and also that there was no error in enforcing appellee's claim upon the one-fifth undivided interest which he owned in his father's estate. (69 S. W., 700, 24 Ky. Law Rep., 595.) While the actions referred to were pending in the Court of Appeals, and on the 11th of April, 1902, Carrie Alderson, as administratrix of J. J. Alderson, instituted an action in the Henderson Circuit Court to settle the estate. She made defendants to this action the appellee, the children of decedent, and such of the creditors as she had information of. On the return of the mandate in the two consolidated cases they were consolidated with this one, and the court made an order referring them to the master commissioner for a report and settlement, and also directed a sale of all the land after setting apart 30 acres as dower for the widow. The commissioner sold the land, except the dower, which it appears from his report brought $5,215.03, from

which was deducted $1,484.19, the amount of the claims of two creditors who held mortgages on the land, leaving about $3,731 for the general creditors and the children of J. J. Alderson, deceased. The lower court, without regard to the interest of the general creditors, whose claims amounted to between $900 and $1,000, and the brothers and sisters of J. W. Alderson, gave appellee a judgment for one-fifth of this balance of $3,731, after deducting the cost of $195, and from this judgment appellants have appealed.

The appellants contend that the general creditors should have also been paid out of this fund before dividing it into fifths; that by the action of the lower court they have erroneously been compelled to pay or contribute to the payment of J. W. Alderson's debt to his child, Lola Green. In other words, they have been compelled to pay all the general creditors, leaving the interest of J. W. Alderson free from the payment thereof. After a careful reconsideration of this case we have arrived at the conclusion that this was error. At common law the heirs and devisees took the realty by descent, free from the debts of the ancestor. (Lawrence's Heirs v. Buckman, 3 Bibb, 23; Same v. Hayden, 4 Bibb, 229; Chambers v. Davis, 17 B. Mon., 534; Taylor v. Jones, 97 Ky., 206, 17 Ky. Law Rep., 85, 30 S. W., 595; Parks v. Smoot, 105 Ky., 63, 20 Ky. Law Rep., 1043, 48 S. W., 146; Kent's Com., vol. 4, p. 420.)

This rule obtained except where the ancestor expressly charged or bound the heirs or devisees for the payment of his debts. This common-law rule was changed by statute in 1797. Since that time the heir or devisee takes by descent or devise the property of the ancestor, subject to all valid claims against the ancestor's estate; taking it with all the burdens he

left upon it. ˙ Lands which descend or are devised are regarded in equity as funds for the payment of debts of the ancestor, and the heirs or devisees should be regarded in chancery as holding the same as a trust fund or property; and the chancellor may either subject the land as a trust fund, or, if the land has been alienated, the chancellor may lay hold of the proceeds for the payment of the ancestor's debts, or render the heir or devisee personally liable to the extent of the value of the land received. (Buford v. Pawling's Ex'rs, 5 Dana, 283.)

Formerly the heir or devisee could alienate lands received at any time after the death of the ancestor, and pass a good title to a bona fide purchaser for a valuable consideration, but under the present statute this can not be done until after six months from the date of the death of the ancestor. And the only way to prevent or defeat the creditors of the deceased from subjecting his land to the payment of their claims is by a voluntary alienation by the heir or devisee after six months from the date of the death of the ancestor. In equity and good conscience, the debts of the deceased should be paid out of the estate left by him before it should be made to pay the individual debts of the heir or devisee.

By its proceedings the banking company, as guardian, only obtained a lien upon the interest of J. W. Alderson in the estate of his father, J. J Alderson. It obtained no greater right or interest than J. W. Alderson had, and he certainly had no right to take his whole one-fifth interest, and leave the creditors of his father unpaid. The general rule is that, between mere equities, that which is prior in time is regarded as the best, and takes precedence over any which may be subsequently created; and our opinion is that the equities of the creditors and the other children

of J. J. Alderson are prior in time to the equity created in favor of appellee by its proceedings referred to.

Appellee claims that the former opinion of this court makes the question herein res adjudicata. To this we can not agree. This court only decided that appellee, by its proceeding, had a valid lien on the interest of J. W. Alderson in the estate of his father. But this lien can not be extended beyond the interest that J. W. Alderson held or owned in his father's estate, and this he received subject to the prior equities of the creditors of his father.

Having arrived at this conclusion, it necessarily results that the former opinion in 83 S. W., 1129, 26 Ky. Law Rep., 1260, should be, and is, withdrawn. Wherefore the judgment is reversed, and the cause remanded for further proceedings consistent herewith.